IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CROWN BAY MARINA, L.P., | ) |
| Plaintiff, | ) ) ) ) ) Civil No. 2018-68 |
| vs. | ) ) |
| SUBBASE DRYDOCK, INC., *et al.*, | ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM OPINION & ORDER**

Currently before the Court is plaintiff Crown Bay Marina, L.P.'s ("CBM") "Motion for Attorney's Fees and Non-Taxable Costs/Expenses." [ECF 228]. Defendant Subbase Drydock, Inc. ("Subbase') filed a response, to which CBM replied. [ECFs 235, 237].

### I.     BACKGROUND

CBM brought this admiralty suit against Subbase to recover for damage to the Crown Bay Marina ("the Marina") caused by two vessels in Subbase's custody that were docked at the Marina during Hurricane Irma.[1] CBM alleged that Subbase negligently moored the two vessels and that Subbase breached two contracts between the parties—the License Agreement and the Evacuation Protocol—by refusing to reimburse CBM for the damage. A bench trial was held on October 22, 26-30, 2020.[2] The Court found that CBM failed to prove that Subbase was negligent but that CBM

---

[1] Hurricane Irma was a Category 5 storm that passed over St. Thomas, U.S. Virgin Islands on September 6, 2017.

[2] This case was consolidated for discovery and trial with another case CBM brought arising out of claimed damages to the Marina from Hurricane Irma: *Crown Bay Marine, L.P. v. Reef Transportation, et al.*, Civil No. 2018-73 (hereafter "*Reef*").

did prove that Subbase breached both contracts.

Only the License Agreement addresses the issue of attorney's fees, costs and expenses. It provides, in paragraph 21, as follows:

> Should it become necessary for Marina to obtain the services of a collection agency or attorney to collect sums due and owing hereunder, or to enforce the liens of the Marina, or to enforce any other provision of this Agreement, then Owner shall pay all costs and expenses, including reasonable attorney's fees, and all court costs incurred by Marina.

[ECF 1-1] ¶ 21. On April 13, 2021, CBM filed a Bill of Costs. [ECF 224]. The present motion followed.

## II. LEGAL STANDARDS

A. <u>Attorney's Fees</u>

The American Rule is that in the absence of legislation providing otherwise, each party generally must pay his or her own attorney's fees. *F.D. Rich Co. v. United States for the Use of Indus. Lumber Co.*, 417 U.S. 116, 126 (1974). Accordingly, the prevailing party in an admiralty case is not entitled to recover its attorney's fees as a matter of course. *Sosebee v. Rath*, 893 F.2d 54, 56 (3d Cir. 1990). There are, however, three exceptions: "Attorneys' fees will be awarded to the prevailing party in maritime cases if: '(1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees.'" *Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) (quoting *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001)); *accord Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 598 F. Supp. 45, 48 (D.V.I. 1984) ("[W]here an indemnitee has been required to defend a law suit [in an admiralty action], such indemnitee may recover attorney's fees from his

indemnitor.") (citing *A.C. Israel Commodity Co. v. Am-West African Line, Inc.*, 397 F.2d 170 (3d Cir. 1968)).

"Federal courts sitting in admiralty adhere to the axiom that a contract should be interpreted so as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004) (quotation marks omitted). Further, where a maritime contract is at issue and the parties have not specified which law controls, the court must apply federal maritime choice-of-law principles. *Triton Marine Fuels Ltd., S.A. v. M/V Pacific Chukotka*, 575 F.3d 409, 413 (4th Cir. 2009). However, "where the parties have included a choice of law clause [in their contract], that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988).

In the Virgin Islands, statutory law provides as follows with respect to attorney's fees:

> The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto . . . .

5 V.I.C. § 541(b). Case law interpreting section 541(b) provides that attorney's fees must be "reasonable." *See, e.g.*, *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *1 (D.V.I. Dec. 20, 2007) (opining that the Virgin Islands' fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs). In determining the reasonableness of attorney's fees, the Court must decide whether the requested hourly rate is "reasonable" and whether the hours billed were "reasonably expended." *Pub. Interest Research Grp. of N.J., Inc. v.*

*Windall*, 51 F.3d 1179, 1185, 1188 (3d Cir. 1995); *accord Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *WDC Miami v. NR Elec.*, 2015 WL 127852, at *4 (D.V.I. Jan. 8, 2015). The Court then multiplies the reasonable hourly rate by the hours reasonably expended, to obtain the lodestar. *Rode*, 892 F.2d at 1183.

In considering the reasonableness of the hourly rates charged or sought, the Court assesses the experience and skill of the attorneys and compares their rates to the prevailing rates where the forum of litigation is located "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (quotation marks omitted); *accord WDC Miami,* 2015 WL 127852, at *4. The Court must base its decision on the record, rather than on "a generalized sense of what is customary or proper." *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996). Further, the Court should consider counsel's experience and skill and should evaluate the rate sought by comparing it to the rates charged by comparable practitioners in the community. *Rode*, 892 F.2d at 1183. Ultimately, however, the movant "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits, . . . that the requested hourly rates meet this standard." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (alteration in original; quotation marks omitted); *see Walker v. Gruver*, 2013 WL 5947623, at *3 (M.D. Pa. Nov. 5, 2013) (citing *Evans v. Port Auth. of N.Y.*, 273 F.3d 346, 360-61 (3d Cir. 2001) ("noting that the burden of establishing a *prima facie* case includes evidence of a reasonable market rate and references to billing rates charged by attorneys of equivalent skill and experience with cases of similar complexity")).

"In evaluating the reasonableness of the hours expended, a court must examine contemporaneous time records that identify, for each attorney, the hours expended on a task, with a view to the value of the work product of the specific expenditures to the client's case." *Virgin*

*Diving, LLC v. M/V Alyeska*, 2018 WL 4766993, at *6 (D.V.I. Feb. 5, 2018) (quotation marks omitted). A court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Pub. Interest Research Grp. of N.J., Inc.*, 51 F.3d at 1188 (quotation marks omitted); *accord CitiMortgage, Inc. v. Baumgarten*, 2020 WL 4572335, at *2 (D.V.I. Aug. 7, 2020).

Further, while a party may request a fee for work that is "useful and of a type ordinarily necessary to secure the final result obtained,"[3] the fee petition must be sufficiently specific to allow the court "to determine if the hours claimed are unreasonable for the work performed."[4] Where, for example, the use of block billing renders it nearly impossible for the Court to determine whether unreasonable time was allocated to specific tasks,[5] the Court will exclude such entries from the requested fee award.

Moreover, any tasks for which fees are sought that were performed by one timekeeper and could have been performed by another timekeeper at a lesser rate, or were plainly "overhead," should be excluded or reduced. *See Grand Union Supermarkets v. H.E. Lockhart Mgmt., Inc.*, 2013 WL 163830, at *2 (D.V.I. Jan. 10, 2013) (disallowing one attorney entry because it "could have been performed by a legal assistant" and disallowing several paralegal entries as "purely clerical tasks"); *Jordan v. SEPTA*, 2013 WL 1234149, at *3 (E.D. Pa. Mar. 26, 2013) ("Purely

---

[3] *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quotation marks omitted); *accord Berne Corp. v. Gov't of the V.I.*, 2012 WL 369535, at *9 (D.V.I. Feb. 3, 2012) (excluding fees incurred in settlement efforts because assessing such fees and costs would "be a disincentive to engage in such efforts").

[4] *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (citation and quotation marks omitted).

[5] *See Bank of N.S. v. Abdallah*, 2013 WL 1846544, at *7 (D.V.I. May 2, 2013) (holding that "[b]y utilizing [block billing], ... counsel failed to meet his burden of showing that the attorney's fees sought were reasonable") (alterations added); *Charlery v. STX Rx, Inc.*, 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) ("If a block entry [containing numerous tasks] is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.") (citation and quotation marks omitted).

clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them, as the cost[s] of clerical work, such as copying and filing, are ordinarily considered to be part of an attorney's rate as office overhead.") (alteration added) (citations and quotation marks omitted); *Sheffer v. Experian Info. Sols., Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003) (same).[6]

Finally, the court must consider the prevailing party's degree of success:

> This is a crucial consideration because where the prevailing party has failed on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee, but where a lawsuit consists of related claims, a prevailing party who has won substantial relief should not have his attorney's fees reduced simply because the court did not adopt each contention raised. However, where the prevailing party achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained.

*Trailer Marine Transp. Corp. v. Charley's Trucking*, Inc., 20 V.I. 286, 289 (Terr. Ct. 1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)); *accord Galt Capital, LLP*, 2007 WL 4800135, at *3. "If a district court reduces hours based on a prevailing party's limited success, it may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Charlery*, 2011 WL 4025438, at *6 (quotation marks omitted). "In either case, it should provide a clear and concise explanation for why it reduced the fee." *Id.*

B.  Costs

Pursuant to the federal statute governing costs in admiralty cases, "[e]xcept as otherwise provided by Act of Congress, the allowance and taxation of costs in admiralty and maritime cases

---

[6] *See also Berne Corp.*, 2012 WL 369535, at *12 ("The Third Circuit has noted its unwillingness to authorize compensation at the high rates associated with an attorney's professional services 'when a lawyer spends time on tasks that are easily delegable to non-professional assistance.'") (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1983)).

shall be prescribed by rules promulgated by the Supreme Court." 28 U.S.C. § 1925. Here, Rule 54 of the Federal Rules of Civil Procedure supplies the standard applied by district courts in awarding what are commonly referred to as taxable costs. *See Del. River Tow, LLC v. Nelson*, 382 F. Supp. 2d 710, 713 (E.D. Pa. 2005) ("Although the Supreme Court has not exercised its power to promulgate rules specifically addressing the allocation of costs in admiralty cases, it has promulgated Federal Rule of Civil Procedure 54."). Rule 54 provides that, with exceptions not relevant here, "costs—other than attorney's fees—should be allowed to the prevailing party." "[T]he discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." *Fleming v. TK Sailing Corp.*, 2008 WL 5115050, at *1 (D.V.I. Dec. 1, 2008) (alteration in original) (quoting *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)).

Generally, taxable costs are those listed in 28 U.S.C. § 1920. *Friedman v. Ganassi*, 853 F.2d 207, 209 (3d Cir. 1988). Section 1920, however, does not apply to the District Court of the Virgin Islands. *See Dr. Bernard Heller Found. v. Lee*, 847 F.2d 83, 87 (3d Cir. 1988) (holding that the District Court of the Virgin Islands is not a United States district court for taxing costs under 28 U.S.C. § 1920). Rather, prevailing parties in the District Court of the Virgin Islands who incur certain costs may be entitled, at the court's discretion, to reimbursement of those costs pursuant to 5 V.I.C. § 541. *See Fleming*, 2008 WL 5115050, at *1 (awarding deposition costs incurred by prevailing party in an admiralty action pursuant to 5 V.I.C. § 541); *Virgin Diving, LLC*, 2018 WL 4766993, at *7 (disallowing reimbursement for the cost of a hearing transcript as not allowable under 5 V.I.C. § 541). "[A]llowing recovery of reasonable costs under § 541 upholds the presumption that a prevailing party should recover costs, other than attorneys' fees, and fills the gap by using the local statute in the absence of any federal statute defining recoverable costs

applicable in the District Court of the Virgin Islands." *Acosta v Hovensa, LLC*, 2020 WL 3077867, at *4 (D.V.I. June 10, 2020).

Under section 541, allowable costs include the following:

(1) Fees of officers, witnesses, and jurors;

(2) Necessary expenses of taking depositions which were reasonably necessary in the action;

(3) Expenses of publication of the summons or notices, and the postage when they are served by mail;

(4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; [and]

(5) Necessary expense of copying any public record, book, or document used as evidence on the trial . . .

5 V.I.C. § 541(a).

C. <u>Expenses</u>

In addition to seeking reimbursement of its costs, a prevailing party in a civil action may also seek reimbursement of its expenses. As explained by the Supreme Court of the Virgin Islands in *Terrell v. Coral World*, when a legislature authorizes the taxation of "costs," it does so expressly in the language of the relevant statute. 55 V.I. 580, 591 n.14 (V.I. 2011). This does not, the court further noted, preclude the reimbursement of additional "expenses," which are not authorized by statute. *Id.* Thus, where the parties expressly agree to such reimbursement, courts must honor the terms of the agreement. *Caterpillar Fin. Servs. Corp. v. Boynes-Jackson*, 2020 WL 7753689, at *6 (D.V.I. Dec. 28, 2020) ("[C]ourts are obligated to enforce contracts as they are made by the parties and not to create additional terms out of thin air.") (quoting *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271 (3d Cir. 2004)). In sum, contracts governed by the law of the Virgin Islands may authorize the reimbursement of both taxable costs (those listed in 5 V.I.C. § 541(a))

and expenses (those provided for by contract). *See Bank of N.S. v. Clarke*, 2017 WL 6453392, at *7 (D.V.I. Dec. 18, 2017) (noting that "the Court will look to Virgin Islands law for guidance in determining reasonable costs and expenses," even where the contract provides for the reimbursement of "all reasonable costs and expenses of suit"). Finally, like attorney's fees, expenses must be reasonable. *See id.* (noting that where the applicable contract does not define "expenses," "Rule 211.1.5 of the Virgin Islands Rules of Professional Conduct . . . [provides that] fees and expenses awarded in the Virgin Islands must be 'reasonable'"); *accord Lakeview Loan Servicing, LLC v. Martinez*, 2020 WL 4572340, at *5 (D.V.I. Aug. 7, 2020) ("[I]n order to recover 'expenses'—non-statutory costs which are permitted to be recovered under the contract terms—those expenses must be reasonable.").

### III.   DISCUSSION

A.   <u>Attorney's Fees</u>

As the prevailing party in a maritime breach of contract action, CBM is entitled to an award of attorney's fees because the License Agreement so provides. Further, because the License Agreement expressly states that the laws of the Virgin Islands and the United States govern the agreement,[7] and because the Virgin Islands has a substantial relationship to the parties in this case,[8] the Court will apply Virgin Islands law. Finally, because federal admiralty law has not addressed

---

[7] Paragraph 17 of the License Agreement provides as follows:

> This Agreement shall be governed by, construed and enforced in accordance with the Laws of the Territory of the U.S. Virgin Islands and the United States of America.

[ECF 1-1] ¶ 17.

[8] Subbase is a U.S. Virgin Islands corporation with its principal place of business in the Virgin Islands, and the Marina is located on St. Thomas, in the Virgin Islands.

the issue of attorney's fees in an action for breach of a contract for dockage,[9] Virgin Islands law controls. *See Szollosy v. Hyatt Corp.*, 396 F. Supp. 2d 159, 164 (D. Conn. 2005) ("'In admiralty cases, federal maritime law applies where it exists.' State law may be imported to federal admiralty actions in limited circumstances, to supply a rule of decision in areas where admiralty is silent.") (quoting *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir.1993)).

1. Reasonableness of Rate Sought

CBM seeks reimbursement for Attorney Cattie's work at an hourly rate of $400. [ECF 228] at 9. In support of its request, CBM submits Attorney Cattie's sworn "Affirmation of Counsel," wherein he states that the hourly rate sought is "customary and reasonable within the Virgin Islands;" that he has been licensed to practice law for more than twenty years; and that he has been practicing law before the District Court of the Virgin Islands for more than sixteen years. [ECF 228-1] ¶¶ 1, 9. In addition, CBM submits affirmations from four other Virgin Islands attorneys attesting to the reasonableness of Attorney Cattie's hourly rate. [ECF 228-5]. Acknowledging that the rate sought is higher than rates previously accepted by this Court, CBM argues that it nevertheless reflects the current market rates for attorneys of comparable experience and that the case "involved complex legal and factual issues." [ECF 228] at 7-8. According to CBM, Attorney Cattie "developed expertise in the area[] of maritime litigation which (hopefully) assisted the Court in the efficient conduct of this litigation and in articulating legal precepts and implement[ing] sound policy." *Id.* at 12. Further, CBM contends that although the cost of living

---

[9] "[N]o specific federal maritime rule covering breach of contract for docking services has been identified," *Brooklyn Navy Yard Dev. Corp. v. Harbor Diesel Fuel Servs., Inc.*, 2014 WL 4364628, at *3 (E.D.N.Y. Aug. 1, 2014), and the Court cannot find any maritime rule that addresses attorney's fees in the context of such a contract. Further, although not at issue in this case, the Court notes that the federal courts of appeals do not agree as to whether state or federal maritime law governs an award of attorney's fees in the context of a marine insurance contract. *See Geico Marine Ins. Co. v. Carnes*, 2021 WL 75134, at *3 (D. Md. Jan. 8, 2021) (discussing cases).

in the Virgin Islands is high, local attorneys are generally reimbursed at a lower rate than their state-side counterparts. *Id.* at 8.

Subbase argues that "[a]lthough this was an admiralty case and had some unique aspects, at the end of the day it was a tort claim and contract claim for property damage." [ECF 235] at 8. Subbase continues: "There was nothing particularly complicated about [the case], particularly given that it was a non-jury trial." *Id.* Subbase therefore contends that an appropriate hourly rate for Attorney Cattie's work in this case is $300. *Id.*

In the Virgin Islands, the courts have, for many years, "generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012); *accord Arrow-Pocono Lines, Inc. v. Lowell Land, LLC*, 2016 WL 2637819, at *5 (D.V.I. May 6, 2016) (explaining "this Court has previously found attorney's fees at $300.00 per hour to be at the upper end of reasonableness in the Virgin Islands" and approving a $300 hourly rate notwithstanding that the attorney had contracted for a rate of $350 per hour) (citations omitted). These rates continue to be recognized as prevailing in the Territory. *See, e.g.*, *Caterpillar Fin. Servs. Corp.*, 2020 WL 7753689, at *5 (Lewis, J.); *Matter of Estate of Benjamin*, 2019 WL 11788658, at *3 (V.I. Super. Ct. Feb. 1, 2019) (Carr, J.); *U.S. Postal Serv. Fed. Credit Union v. Edwin*, 2018 WL 1077291, at *4 (D.V.I. Feb. 27, 2018) (Cannon, J.).[10]

Here, CBM summarily concludes that the case involved complex issues. It fails, however, to explain why it believes that Attorney Cattie's experience per se warrants reimbursement at a rate higher than that typically awarded in the Virgin Islands. Further, CBM's claim that Attorney

---

[10] CBM identified two District Court cases where the rate allowed was $325 per hour. [ECF 228] at 7. There, however, the courts were considering fees for attorneys with 32 and nearly 40 years of experience, respectively. *See Dorval v. Sapphire Vill. Condo. Ass'n*, 2020 WL 2487560, at *4 (D.V.I. May 14, 2020); *United States Postal Serv. Fed. Credit Union*, 2018 WL 1077291, at *4 (D.V.I. Feb. 27, 2018).

Cattie "developed" an expertise for the purpose of trying this case in fact highlights his previous lack of experience in this area of the law. Ultimately, the Court is not persuaded that reimbursement at an hourly rate greater than $300—the maximum rate generally awarded in this jurisdiction—is justified. Further, despite counsel's efforts to master the intricacies of maritime law, ultimately, counsel's success in this case was in the prosecution of a relatively simple breach of contract claim. In other words, whereas CBM's failed negligence claims involved the application of the Louisiana Rule, a concept unique to federal maritime law, the breach of contract claim did not require the use of any such specialized principles.

Finally, the Court notes that in *Caterpillar Financial Services Corporation*, Attorney Cattie's client ultimately agreed to limit its request for attorney's fees to $300 per hour for his work, despite the fact that he charged between $415 and $430 per hour. 2020 WL 7753689, at *5. The Court determined that a $300 hourly rate was "reasonable and customary and falls within the scope of rates for such services." *Id.* Although the Court further noted that the case "was more complex than the run-of-the mill uncontested summary judgment debt and foreclosure cases," *id.*, it did so as part of its consideration of the reasonableness of the time expended, not as a justification for an award of attorney's fees at a rate greater than $300 per hour.

2. <u>Reasonableness of Hours Expended</u>

Here, CBM seeks reimbursement for 312.2 hours of Attorney Cattie's work, expressly omitting time spent on (1) conferences with opposing counsel or co-counsel in the *Reef* matter; (2) emails with opposing counsel; (3) certain legal research that was redundant or otherwise unreasonable; and (4) some conferences with CBM representative Kosei Ohno. [ECF 228-1] ¶¶ 4, 8.

Upon review of CBM's fee petition, the Court finds that CBM has not met its burden of

showing that all the attorney's fees sought are reasonable. First, the Court will deduct 5.6 hours spent on settlement efforts, based on *Berne Corp.*, 2012 WL 369535, at *9. Additionally, the Court will disallow 4.0 hours of time spent on attending an "evidentiary hearing," which was a hearing on a disqualification motion in the *Reef* case.

Of the remaining hours, the Court identified a number of hours that are specific to the failed negligence claim, and that relate to issues other than causation and damages. Thus, even though CBM's proof on the negligence and breach of contract claims overlapped in some respects, the Court will exclude hours identifiable solely as relating to the negligence claim. This includes time related to experts Bridges and van der Heide, and research and motions on issues regarding vessel mooring and negligence presumptions.[11] This reduction is appropriate for the additional reason that even with respect to the contract claim, CBM achieved limited success. These reductions result in a fee award based on 264.7 hours at a rate of $300.00 per hour, or $79,410.00.

3. <u>Multipliers</u>

CBM retained Attorney Cattie on a contingency fee basis. [ECF 228] at 9. Specifically, CBM agreed to pay Attorney Cattie "33.33% of any recovery in this matter, plus any advanced costs and expenses." [ECF 228-3] ¶ 5. In addition to seeking reimbursement at an hourly rate for Attorney Cattie's work, CBM seeks a contingency multiplier of 50% of the lodestar plus an additional delay multiplier of 10% of the lodestar. [ECF 228] at 12-13. Subbase does not address CBM's request for contingency and delay multipliers.

Generally, "the district court has the discretion to make certain adjustments to the lodestar."

---

[11] These entries are on 8/6/19 (1.2 hrs); 6/3/20 (9.0 hrs); 6/8/20 (1.5 hrs); 6/9/20 (4.8 hrs); 6/10/20 (8.5 hrs); 7/24/20 (1.9 hrs); 9/15/20 (4.4 hrs); 9/17/20 (0.4 hrs); 10/2/20 (0.4 hrs); 10/8/20 (2.5 hrs); 10/23/20 (1.5 hrs); and 10/26/20 (1.5 hrs).

*Rode*, 892 F.2d at 1183. For example, the court may award a contingency multiplier "to compensate counsel for the riskiness of undertaking the litigation." *Id.* at 1184 (quotation marks omitted). However, such multipliers are awarded "only in rare cases," and require the petitioner to demonstrate "(1) how the market treats contingency fee cases as a class differently from hour fee cases; (2) the degree to which the relevant market compensates for contingency; (3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and its case; and (4) that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." Id. (citing and quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731-33 (1987) (quotation marks omitted)). A court may also award a delay multiplier, which "is essentially equivalent to an award of interest." *Student Pub. Interest Research Grp. of N.J. v. AT&T Bell Labs.*, 842 F.2d 1436, 1453 (3d Cir. 1988). Here, too, however, the petitioner must satisfy a high burden; the petitioner must produce "carefully developed evidence of the costs to plaintiffs of receiving the delayed payment for services." *Id.* (quotation marks omitted).

In the case at bar, CBM fails to satisfy its burden as to either multiplier. In Attorney Cattie's affirmation, the only reference to the case having been taken on a contingency fee basis is as follows: "Counsel took this matter on contingency and without guarantee of payment. Counsel has not been paid for any of the work done on this case to date, and has been working on this matter without remuneration for almost three years." [ECF 228-1] ¶ 10. Further, none of the additional attorney affidavits submitted in support of the fee petition even reference contingency fee arrangements, let alone the contingency fee market in the Territory. *See* [ECF 228-5]. Thus, regarding a contingency fee multiplier, CBM does not address any, let alone all four of the

requirements.[12] Similarly, regarding a delay multiplier, CBM fails to address, let alone carefully develop evidence of, the costs it incurred from the delayed payment. Accordingly, the Court declines to award a multiplier.[13]

B. <u>Costs and Expenses</u>

In a separate "Bill of Costs" filed with the Clerk of Court, CBM seeks reimbursement of certain "costs."[14] Further, in its motion for attorney's fees, CBM also seeks reimbursement of certain "non-taxable costs/expenses."[15]

---

[12] CBM cites *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3rd Cir. 1973), in support of its request for a "contingency enhancement." [ECF 228] at 9. However, the *Lindy* case dealt with an award of attorney's fees in a common fund case, and although the Supreme Court adopted the approach in statutory fee-shifting cases, *see Hensley*, 461 U.S. at 433, CBM fails to cite any controlling authority mandating the use of a multiplier when calculating an award of attorney's fees in a simple breach of contract claim.

[13] Although CBM argues that because Subbase did not oppose its request for multipliers, "it has conceded Crown Bay's entitlement thereto," [ECF 237] at 10, the Court disagrees. In *Rode*, the Third Circuit held that "the district court cannot deny a post-lodestar request when the party opposing the request, with full opportunity to do so, fails to object to that post-lodestar adjustment." 892 F.2d at 1189. However, the *Rode* decision was in a statutory fee case. The instant case is not a statutory fee case. Therefore, the Court, in an exercise of its discretion, denies CBM's request for any multipliers. *See U.S. v. Eleven Vehicles, Their Equipment & Accessories*, 200 F.3d 203, 212 (3d Cir. 2000) (noting that "this prohibition on *sua sponte* reduction of fees applies only to challenges to the excessiveness of a fee request").

[14] Subbase argues that the amounts CBM seeks in its "Bill of Costs" should be reviewed by the Clerk of Court in the first instance. [ECF 235] at 9. Subbase further contends that only those costs allowed by § 541 are recoverable, excluding, for example, filing fees and costs of service of process. *Id.* at 10. Regarding the costs of trial transcripts, Subbase contends that the Court should, at most, only award 50% because the amount sought covers costs incurred in both this case and the *Reef* case. *Id.* at 11. Finally, Subbase argues that none of the claimed copying costs are recoverable because CBM failed to separate the costs by case. *Id.*

[15] Subbase argues that these expenditures are not recoverable under the terms of the contract because CBM "did not specify that it was seeking costs as an element of contract damages" in its complaint. [ECF 235] at 12. Subbase further contends that CBM waived its right to recover "non-taxable costs/expenses" because it did not list any costs in (1) CBM's Rule 26 initial disclosures: (2) the Joint Final Pretrial Order; or (3) CBM's statement of legal issues in this case. *Id.* Alternatively, Subbase contends that even if the Court finds that CBM did not waive its right to seek reimbursement for these expenditures, certain ones should be excluded, such as costs incurred prior to the initiation of the lawsuit and amounts expended on its unsuccessful negligence claim. *Id.* at 13-14.

CBM maintains that all its costs are recoverable. [ECF 237] at 13-15. According to CBM, the broad language of the contract, which directs payment of "all costs and expenses" and "all court costs," includes costs incurred prior to the filing of the lawsuit. *Id.* at 13. CBM also argues against any reduction for amounts related to the negligence claim because both the negligence and breach of contract claims "stemmed from a common core of facts, and shared the common element of causation." *Id.* at 15.

Reimbursement of costs and expenses in this case is uniquely governed by principles of federal maritime law, Virgin Islands statutory law, and common law principles of contract interpretation. Here, although CBM sought reimbursement of its taxable costs from the Clerk of Court, [ECF 224], as set forth above, when the District Court of the Virgin Islands sits in admiralty, 5 V.I.C. § 541(a) governs an award of taxable costs. Therefore, the Court must first determine whether the amounts CBM seeks either in its "Bill of Costs" or in its motion are compensable under § 541(a). Next, the Court must determine whether any of the remaining amounts are nevertheless reasonable expenses that are reimbursable under the broad language of the contract.

1. Allowable Costs Under 5 V.I.C. § 541(a)

The Court finds that the costs of deposition transcripts are reimbursable under the statute. Regarding the deposition transcripts of Knopf and Ferreras, however, the Court will not reimburse CBM the full amount sought because their testimony was obtained for both the *Reef* case and this case. Further, that testimony related to both the wholly unsuccessful negligence claim and the only somewhat successful breach of contract claim.[16] Thus, the Court will, in an exercise of its

---

[16] The Court permitted Knopf, a licensed general contractor specializing in maritime contracting, to testify based on his knowledge of certain facts and based on his expertise in the areas of marine construction and repair. At trial, Knopf testified to the cost of temporary repairs and regarding his estimates for the cost of permanent repairs to the Marina. However, Knopf failed—despite amending his initial estimates shortly before trial—to provide the Court with a breakdown of repair costs by sufficiently discrete areas of the Marina. Thus, the Court was unable to determine the costs associated with repairing certain areas of the Marina the Subbase vessels damaged, such as the B-Dock dolphin piles, the West side of the C-Dock, and the fendering on the T-1 and T-2 docks.

The Court accepted Ferreras, a structural engineer, as an expert forensic engineer. Ferreras testified to, *inter alia*, causation and damages regarding CBM's breach of contract claim. However, like Knopf's testimony, Ferreras' was of limited utility to the Court. Considering Ferreras' testimony as to causation, the Court found that CBM failed to meet its burden regarding damages to the B2/B3 and C18/C20 finger piers. Further, the Court expressly noted Ferreras' candor as to the limitations regarding his opinions. In sum, although the Court concluded that the Subbase vessels (1) damaged the C9/C11 and C13/C15 finger piers and several pilings in the area; (2) damaged the C-Dock itself; (3) ripped out and damaged cleats located on the T-1 and T-2 docks; and (4) damaged the whalers and a utility box on the T-1 dock, the Court was unable, based on Ferreras' testimony, to find that the Subbase vessels damaged additional areas of the Marina, as CBM argued.

discretion, only award 25% of the amounts sought with respect to the Knopf and Ferreras transcripts. Similarly, reimbursement for the Ohno, Kissman and Ocello deposition transcripts will be at 50% of the amount claimed, as those depositions were taken for use in both cases.

| Description of Allowable Costs | Amount ($) |
|---|---:|
| Depo. Transcript Kosei Ohno (1,736.40 x 50% = 868.20) | 868.20 |
| Depo. Transcript Kosei Ohno (454.50 x 50% = 227.25) | 227.25 |
| Depo. Transcript Subbase | 1,335.00 |
| Depo. Transcript Kissman (598.44 x 50% = 299.22) | 299.22 |
| Depo. Transcript Ocello (1,024.00 x 50% = 512.00) | 512.00 |
| Depo. Transcript Knopf (594.60 x 25% = 148.65) | 148.65 |
| Depo. Transcript Ferreras (894.00 x 25% = 223.50) | 223.50 |
| Depo. Transcript Knopf (1,497.40 x 25% = 374.35) | 374.35 |
| Depo. Transcript Ferreras (807.00 x 25% = 201.75) | 201.75 |
| Total | 4,189.92 |

2.  <u>Allowable Expenses Under the License Agreement</u>

Here, the parties expressly agreed in the License Agreement that CBM was entitled to be reimbursed for "all . . . expenses" incurred in any action to enforce the contract. Further, Subbase fails to cite any authority whatsoever in support of its argument that CBM waived its right to claim expenses expressly provided for by contract. The Court therefore finds that the following amounts are reasonable and, therefore, reimbursable under the License Agreement. Regarding the trial transcripts and copying costs, the Court will only reimburse half of the amounts sought because both cases are included in the total. Regarding the amounts expended on fees for Ferreras[17] and

---

Ferreras also testified regarding damages. While such testimony was, in certain instances, more detailed than Knopf's—the Court based its award for damages to the C-Dock and the T-1 and T-2 docks not on Knopf's testimony but on Ferreras' estimates—Ferreras, too, failed to provide cost estimates for replacing and repairing discrete areas of the Marina.

[17] Subbase argues, *inter alia*, that Ferreras' fees should not be reimbursed because they were incurred prior to the beginning of litigation. *See, e.g.*, [ECF 235-4] at 1. However, that a cost was incurred prior to the filing of the complaint does not mean that it is not compensable under § 541. The issue is whether the cost appears to relate to the action. *See Bank of N.S.*, 2017 WL 6453392, at *8 (disallowing a certified mail expenditure and service fee in a debt and foreclosure action because it was incurred months before the litigation commenced and did not appear to be related to the action); *LPP Mortg., Ltd. v. Ferris*, 2014 WL 2459802, at *9 (D.V.I. June 2, 2014) ("[T]he Court will not

Knopf, the Court will only reimburse one quarter of the amount sought because, as noted above, CBM relied on their expertise in both cases and in support of both claims—only one of which was partially successful.

| Description of Allowable Expenses | Amount ($) |
|---|---:|
| Court Filing Fees | 400.00 |
| Fees for Service of Summons/Subpoena | 75.00 |
| Trial Transcripts (7,196.40 x 50% = 3,598.20) | 3,598.20 |
| Copying Costs (314.72 x 50% = 157.36) | 157.36 |
| "Deposit for evaluation of marina" by expert witness Paul Ferreras (2,500.00 x 25% = 625) | 625.00 |
| "Site observation and report" by Ferreras (4,325.00 x 25% = 1,081.25) | 1,081.25 |
| "Field meetings/site meetings and report edits" by Ferreras (4,662.50 x 25% = 1,165.63) | 1,165.63 |
| "Field meetings and report updates" by Ferreras (912.50 x 25% = 228.13) | 228.13 |
| "Attorney meetings/site inspections and report updates" by Ferreras (4,522.50 x 25% = 1,130.63) | 1,130.63 |
| "Assist counsel and Crown Bay with supplemental report on damage" by Ferreras (450.00 x 25% = 112.50) | 112.50 |
| "Deposition" by Ferreras (2,800.00 x 25% = 700) | 700.00 |
| "Preparation for deposition" by Ferreras (2,525.00 x 25% = 631.25) | 631.25 |
| "Deposition preparation and continued deposition" by Ferreras (2,750.00 x 25% = 687.50) | 687.50 |
| "Preparation/court testimony" by Ferreras (2,800.00 x 25% = 700 | 700.00 |
| "Preparation time for court testimony" by Ferreras (4,275.00 x 25% = 1,068.75) | 1,068.75 |
| Trial subpoena for Kral Jr., Kral Sr., and Mike Conway | 225.00 |
| "Trial preparation and trial" for expert witness Mark Knopf (2,075.00 x 25% = 518.75) | 518.75 |
| "'Before and after' photos of marina" by Herman van der Heide | 1,950.00 |
| Total | 15,054.95 |

3.   Disallowed Amounts

Finally, the Court finds that the following amounts are not reimbursable. These amounts

---

reimburse the $1,218.36 in costs incurred prior to the September 2011 filing of the federal court Complaint, nor charges incurred after September 2011 that are not identified, as they have not been shown to be 'reasonably expended' to advance this litigation."). Further, even if the Court did not deem Ferreras' fees compensable as costs under § 541(a), that does not mean they are not recoverable under the language of the contract.

were expended on expert witnesses van der Heide and Bridges, on whom CBM relied in both the *Reef* case and in the present case only to support the negligence claim.

| Description | Amount ($) |
|---|---:|
| Depo. Transcript van der Heide | 941.50 |
| Depo. Transcript Bridges | 1,624.50 |
| "Retainer" for expert witness Joseph Bridges | 3,595.00 |
| "Review documents and draft report" by Bridges | 6,270.00 |
| "Deposition preparation" by Bridges | 4,950.00 |
| "Deposition testimony and deposition preparation" by van der Heide | 2,100.00 |
| "Trial preparation and attending trial" by Bridges | 24,174.24 |
| "Mediation" with Attorney David Nichols | 1,000.00 |
| Total | 43,655.24 |

## IV.  CONCLUSION

For the foregoing reasons, CBM's "Motion for Attorney's Fees and Non-Taxable Costs/Expenses" [ECF 228] is GRANTED IN PART and DENIED IN PART as follows:

(1)  CBM is awarded $79,410.00 in attorney's fees; and

(2)  CBM is awarded $19,244.87 in costs and expenses.


**Dated:**  July 12, 2021         S\_____
                              **RUTH MILLER**
                              United States Magistrate Judge